## IN THE UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| **DIANA ELAINE FREEMAN-CLAY,** | ) | **Case No. 14-41871-drd13** |
| Debtor. | ) | |
| ———————————————— | ) | |
| **DANIEL J. CASAMATTA,** | ) | |
| **ACTING UNITED STATES TRUSTEE** | ) | |
| **FOR REGION 13** | ) | |
| Plaintiff, | ) | **Adversary No. 16-4102** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **RESURGENT CAPITAL SERVICES, L.P.;** | ) | |
| **LVNV FUNDING, LLC;** | ) | |
| **HSS SYSTEMS, LLC, d/b/a PARALLON** | ) | |
| **BUSINESS SOLUTIONS; and** | ) | |
| **MIDWEST DIVISION – RMC, LLC,** | ) | |
| **d/b/a RESEARCH MEDICAL CENTER,** | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |
| In re: | ) | |
| **KEITH ROY DAVIS, SR. and** | ) | **Case No. 14-20400-drd13** |
| **LEANNE ELIZABETH DAVIS,** | ) | |
| Debtor. | ) | |
| ———————————————— | ) | |
| **DANIEL J. CASAMATTA,** | ) | |
| **ACTING UNITED STATES TRUSTEE** | ) | |
| **FOR REGION 13,** | ) | |
| Plaintiff, | ) | **Adversary No. 16-2018** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **RESURGENT CAPITAL SERVICES, L.P.;** | ) | |
| **LVNV FUNDING, LLC; and** | ) | |
| **MERRICK BANK,** | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

## MEMORANDUM OPINION ON MOTION TO DISMISS

Pending before the Court is the motion to dismiss brought under Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b)(6) by defendants LVNV Funding, LLC, HSS Systems, LLC d/b/a Parallon Business Performance Group, Midwest Division-RMC, LLC d/b/a Research Medical Center, Merrick Bank and Resurgent Capital Services, L.P. ("Resurgent") (collectively "Defendants").  In his multi-count Amended Complaint ("Complaint"),[1] the United States Trustee ("Plaintiff" or "UST") alleges sanctions of various kinds should be imposed on Defendants for what he characterizes as violations of numerous provisions of the Bankruptcy Code and Rules and, in some instances, this Court's local rules.

Those alleged violations arise in the context of Resurgent's practices and procedures with regard to the processing and filing of proofs of claim.  Specifically, the UST challenges Resurgent's process regarding signature and attestation of claim forms, the filing of claims barred by the statute of limitations and the failure to attach documents or provide information required by Fed. R. Bankr. P. 3001(c).  The UST alleges these violations are systematic and intentional and characterizes the behavior as abuses of process which he asks this Court to remedy using § 105 of the Code or its inherent power to sanction.  If the allegations are true, the Court finds some aspects of Resurgent's behavior disturbing.  However, for the reasons

---

[1] This Memorandum Opinion resolves the motion to dismiss complaints filed in two adversary proceedings which the Court has consolidated.  The Complaint filed in the *Freeman-Clay* case was amended.  The one in the *Davis* case was not.  The relief requested by the UST in Counts I, II, III and VI of the Complaints is identical although different defendants are involved in the two cases.  Counts IV and V relate to specific proofs of claim filed in the individual bankruptcy cases.  The bases for the objections and the Court's disposition of them are described in detail in Part V of this Memorandum Opinion.  In using the term "Complaint" the Court means to refer to both Complaints, the only differences being with respect to the different claims to which objection is made in Counts III and IV.  When the Court refers to Counts IV and V, it means the counts of both Complaints.

discussed at length below, it grants the motion to dismiss in substantial part because the UST has failed to establish that Resurgent's conduct violates applicable provisions of the Bankruptcy Code and Rules, that it rises to a level making the imposition of sanctions appropriate or that the specific remedies requested are available.

This juxtaposition of the UST's vigorous allegations and the Court's assessment of the applicable law is vaguely reminiscent of a scene from Robert Bolt's play *A Man for All Seasons*, about the life of Sir Thomas More and his struggles with Henry VIII.  More is confronted by his family and soon-to-be son-in-law, William Roper, about a servant who is thought to be giving information to his adversaries.  Urged to have the man arrested, More declines noting that he has done nothing to violate the law and should remain free until he does so and would, even if he were the Devil himself.  The following discussion ensues:

Roper:  So, now you give the Devil the benefit of law!

Sir Thomas More:  Yes!  What would you do?  Cut a great road through the law to get after the Devil?

William Roper:  Yes, I would cut down every law in England to do that!

Sir Thomas More:  Oh?  And when the last law was down, and the Devil turned round on you, where would you hide, Roper, the laws all being flat?  This country is planted thick with laws, from coast to coast, Man's laws, not God's!  And if you cut them down, and you are just the man to do it, do you really think you could stand upright in the winds that would blow then?  Yes, I'd give the Devil benefit of law, for my own safety's sake!

The point is that persons who are or whose behavior has been unsavory or worse may not be subject to adverse legal consequences unless their conduct has violated the law.  To do otherwise jeopardizes the very concept of the rule of law.[2]

## I.      Procedural Background and Applicable Law

### A.  Summary of Claims

In Count I, Plaintiff alleges that Resurgent has affixed, to thousands of proofs of claim filed in this jurisdiction and others, the name of an individual employee, although she had not personally reviewed the claims or participated in the process of preparing them and thus improperly certified that she had personal knowledge from which to form a belief that the information contained in the claims was true and correct.  This practice is alleged to contravene Fed. R. Bankr. P. 3001(b) and this Court's local rule 5005-1.(B).  He requests an injunction, unspecified forms of monetary relief, revocation or suspension of Defendants' ECF credentials and the appointment of an independent monitor to insure compliance with the terms of any judgment the Court might render on the Complaint.  In Count II, he describes Resurgent's practice of knowingly filing claims barred by the applicable statute of limitations which he characterizes as an abuse of the bankruptcy process.  He requests sanctions based on Fed. R. Bankr. P. 9011, § 105 of the Bankruptcy Code and this Court's inherent power to sanction. Specifically, he asks for unspecified monetary relief, an injunction prohibiting the Defendants from filing claims when they have no good faith meritorious response to the statute of limitations defense or to impose a requirement that they submit a separate certification with each proof of

---

[2] The Court certainly does not mean to equate Resurgent with the evil personage mentioned.  Neither, the Court assumes, does the UST, though the tenor of his allegations almost suggests as much.

claim filed and the appointment of an independent monitor to insure compliance with this
Court's Order.  In Count III, he notes that Resurgent has filed numerous claims which fail to
comply with the requirements of Fed. R. Bankr. P. 3001(c) which imposes specific requirements
for the attachment of a writing, if the claim is based on one, and for the provision of specified
pieces of information in connection with claims based on open-end credit accounts.  He requests
this Court sanction Resurgent for knowingly filing claims not in compliance with the rule.  Once
again, the requested remedies are unspecified monetary relief, an injunction and the appointment
of an independent monitor.  In Counts IV and V, he seeks disallowance of specific proofs of
claim filed by Resurgent on behalf of one or more of the other Defendants in the two underlying
bankruptcy cases.  Disallowance of the claims is sought on the basis of improper attestation,
failure to supply appropriate documentation, other indicia in the record that the claims may be
invalid or filed in incorrect amounts and that they are barred by the applicable statute of
limitations.  In both counts, he seeks an order barring Resurgent from presenting evidence in any
proceeding with respect to the validity of the claims, awarding reasonable attorneys' fees caused
by Resurgent's failure to comply with Rule 3001(c) and unspecified monetary relief.  In the
ultimate count of the Complaint, he seeks relief on some of the various allegations contained in
the previous counts under this Court's inherent power to sanction litigants.

The Court has jurisdiction over the claims asserted in the Complaint and the motion to
dismiss pursuant to 28 U.S.C. § 1334(a) and (b).  These matters are core matters, both statutorily
and constitutionally, pursuant to 28 U.S.C. § 157(b)(1) and (2)(A), (B) and (O) which this Court
may hear and determine and as to which it may issue final orders.  A more detailed description of
the claims, Resurgent's responses, and this Court's reasons for disposing of them as it does are

5

set forth below in the specific sections of the opinion dealing with the individual claims and issues raised by the Amended Complaint and the motion to dismiss.

### B.  Applicable Standard on Motions to Dismiss

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint assuming all the factual allegations in the complaint are true. *Mobley v. McCormick*, 40 F. 3d 337, 340 (10th Cir. 1994). A plaintiff's obligation to provide the grounds of his or her entitlement to relief requires more than labels and conclusions. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). To withstand a motion under Rule 12(b)(6), a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp.,* 550 U.S. at 577; *see also, Alexander v. Hedback*, 718 F.3d 762 (8th Cir. 2013); *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872 (8th Cir. 2010). To defeat a motion to dismiss for failure to state a claim, the plaintiffs need not provide specific facts in support of their allegations, but they must include sufficient factual information to provide the grounds on which the claim rests, and to raise a right to relief above a speculative level. *See Schaaf v. Residential Funding Corp.*, 517 F.3d 544 (8th Cir. 2008). When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court should limit its review to the four corners of the complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). The court must view the facts alleged in the light most favorable to the plaintiff. *In re Glossip*, 331 B.R. 871 (Bankr. W.D. Mo. 2005) (citing *Burkhalter v. Lindquist & Trudeau, Inc.,* 2005 WL 1983809 (E.D. Mo. Aug. 16, 2005)).

### II.   Resurgent's Proof of Claim Filing Practices – Signature and Attestation

The parties do not dispute that Resurgent filed thousands of proofs of claim that contained Ms. Gaines' electronic signature and were filed using her electronic case filing

("ECF") credentials, but that Ms. Gaines did not personally review.  The UST asserts that this practice not only violates the Rules of Bankruptcy Procedure and local rules, but constitutes an abuse of the bankruptcy system.  In Count I of the Complaint, the UST seeks (A) appropriate remediation and monetary relief to debtors, the estate, and the bankruptcy system; (B) injunctive relief barring Resurgent from filing proofs of claim containing inaccurate verifications; (C) revocation or suspension of the ECF credentials of Resurgent or a prohibition on Resurgent filing claims in this district without a member of the bar of this Court; and (D) the appointment of an independent monitor to oversee Resurgent's practices. Resurgent urges dismissal of this count on both substantive and procedural grounds, namely that its proof of claim procedures are proper, and that § 105 does not authorize the Court to grant the relief sought for the alleged violations. From this Court's vantage point, therefore, two issues must be addressed in its analysis:  1)  the alleged infractions,  and 2) the requested remedies.

**A.  Official Forms and Rules Applicable to Proofs of Claim**

Proof of Claim Form B10 (Official Form 10) became effective December 1, 2011.  At that time, the following statement was added above the signature line:  "I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief."  The Advisory Committee Note indicates that the signature box was "revised to include a declaration that is intended to impress upon the filer the duty of care that must be exercised in filing a proof of claim. *The individual who completes the form must sign it.*"  Advisory Committee Note 2011, Section 8 (emphasis added).

The instructions on the claim form itself are explicit:

7

> *The individual completing this proof of claim must sign and date it.*
> …If you sign this form, you declare under penalty of perjury that
> the information provided is true and correct to the best of your
> knowledge, information, and reasonable belief.  Your signature is
> also a certification that the claim meets the requirements of FRBP
> 9011(b).  Whether the claim is filed electronically or in person, if
> your name is on the signature line, you are responsible for the
> declaration.

Instruction No. 8 (emphasis added).

Effective December 1, 2015, Official Form 10 was replaced by Official Form 410.  One of the amendments was the attestation which now reads:  "I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.  I declare under penalty of perjury that the foregoing is true and correct." The notation in the margin cites to FRBP 9011(c) and reads, "The person completing this proof of claim must sign and date it."   It is well-settled that Rule 9011 applies to proofs of claim.  *See, e.g., Hannon v. Countrywide Home Loans Inc. (In re Hannon)*, 421 B.R. 728, 731 (M.D. Pa. 2009); *In re Thomas*, 337 B.R. 879, 895 (Bankr. S.D. Tex. 2006).

The UST states in its Complaint that Ms. Gaines "neither reviewed nor signed" the proofs of claim.  He argues that Resurgent's practice of affixing the electronically-generated signature of Ms. Gaines to its proofs of claim was misleading and inaccurate, and in violation of applicable Rules.  In particular, he contends that the declarations bearing Ms. Gaines' signature improperly certified that she had personal knowledge and information from which she could form a reasonable belief that the information provided in each proof of claim was true and correct. Resurgent asserts that its procedures for the signing and filing of proofs of claim have complied at all times with the requirements of Bankruptcy Rule 3001 and this Court's local rules. It also

asserts that it was not improper at the time for a creditor or claim servicer to engage in a process designed to ensure the accuracy of its proofs of claims, and for an individual with personal knowledge of that process to authorize the affixing of her signature to those claims. More significantly, Resurgent takes the position that the UST does not and cannot allege that any violation was clear enough to warrant sanctions.

For the reasons that follow, the Court concludes that while Ms. Gaines' electronic signature on the proofs of claim was a valid signature in compliance with this Court's local rules and ECF administrative procedures, Resurgent's alleged process for preparing and reviewing claims fell short of the requirements of Official Form 10 and Bankruptcy Rule 9011. Despite Resurgent's questionable practices, the Court holds that the imposition of sanctions would be improper under these facts.

### B.   Were Resurgent's Procedures for Signing Proofs of Claim Proper?

Resurgent filed seven proofs of claim in the Freeman-Clay and Davis bankruptcy cases. Of those, all but one were not reviewed by Ms. Gaines, but all contained her electronic signature. Each was filed when Official Form 10 was in effect. The thousands of other claims which the UST contends were robo-signed were also filed when Official Form 10 was in effect.

The UST cites several cases penned by this Court to support its position that the Court has sanctioned parties in the past who have engaged in the practice of presenting a document with the representation that it had been signed, when in fact it had not: *In re Miller Automotive Group, Inc.*, 521 B.R. 323 (Bankr. W.D. Mo. 2014), *aff'd*, 536 B.R. 828 (B.A.P. 8th Cir. 2015); *In re Clink*, 2013 WL 1741945 (Bankr. W.D. Mo. April 23, 2013), *aff'd*, 771 F.3d 719 (8th Cir. 2014); *In re Nunez*, Case No. 08-44291-jwv7, ECF Dkt. #62 (Bankr. W.D. Mo. May 11,

2009)(unpublished order).   However, these cases are distinguishable and reflect a different concern than the one raised here. In *Miller Automotive*, for example, the debtor's attorney was sanctioned for engaging in a laundry list of practices that revealed a pattern of professional misconduct, procedural non-compliance, and ethical violations.   Yes, he failed to follow the Court's ECF Administrative Procedures, but the similarity to Resurgent's case ends there.   The debtor's attorney in *Miller Automotive* regularly procured his clients' signatures by facsimile, and most often, sent only the signature page to them rather than the entire document.   Moreover, it was not unusual for the attorney to file a document on his client's behalf without explaining to them its substance or purpose.   That was only one of many practices from which the Court could infer bad faith.   Such is not the case here.   There is no allegation that Resurgent was not the authorized agent for the creditors on whose behalf it executed the proofs of claim, that Ms. Gaines was not authorized to sign for Resurgent, or that the persons placing her electronic signature on the documents were not authorized to do so.

The UST draws the parallel between the *Miller* line of cases and this one, arguing that Resurgent "caused the claim to be filed while knowing that [sic] original document did not actually contain Ms. Gaines's signature because she had neither reviewed nor signed the document."   The Court rejects that argument because her electronic signature does in fact appear on the claims.   She is, therefore, responsible for the information contained in them.

The UST also contends that Resurgent's practices violate Rule 3001(b) and Local Rule 5005-1.   Rule 3001(b) provides that a proof of claim "shall be executed by the creditor or the creditor's authorized agent."   The rule is about who may sign for a creditor, not what constitutes a signature.   Cases addressing this Rule involve situations in which the scope of an agent's

10

authority is challenged, such as when an individual who executed the proof of claim lacked the authority to do so on behalf of the creditor.  *See, e.g.*, *In re Palmdale Hills Property, L.L.C.*, 457 B.R. 29, 50 (9th Cir. B.A.P. 2011) (whether a principal must expressly authorize its agent to file a proof of claim); *In re Birting Fisheries, Inc.*, 92 F.3d 939 (9th Cir. 1996) (whether Rule 3001 allows the filing of a class proof of claim).  Here, as stated previously, the UST has not alleged that Resurgent was not the authorized agent for the creditors on whose behalf it was signing, nor does he allege that Ms. Gaines was not an agent or employee of Resurgent authorized to sign. Therefore, the UST has failed to allege a valid violation of Rule 3001(b) under these facts.

Local Rule 5005-1(B) of the United States Bankruptcy Court for the Western District of Missouri provides that "[t]he Court will accept for filing those documents submitted, signed or verified by electronic means that comply with procedures established by the Court and incorporated in these Rules or otherwise specified in its current ECF Administrative Procedures."  The ECF procedures provide that the use of an ECF login to file a document required to be signed is "the filer's representation that the party whose signature is required has, in fact, signed the document."  United States Bankruptcy Court for the Western District of Missouri ECF Administrative Procedures at §II(D)(5).  As Resurgent points out, in this case Resurgent, as the servicer for the underlying creditor, is the "party" whose signature is required. Again, since Ms. Gaines served as an agent for the creditors, and her authority was not challenged, the UST's allegation that her electronic signature on the proofs of claim violated Local Rules or Procedures is incorrect.   Nothing in the Local Rules prohibits an electronic signature on a proof of claim.  Indeed, the Rules are quite specific with respect to the form of signature required for certain other documents. *See, e.g.*,  Local Rule 1007-1.D. (Declaration Re:

11

Electronic Filing "shall contain an image of an original document signed by the debtor(s) or an image with the debtor'(s) signature captured electronically at the time of document generation…."); Local Rule 3095-1 (Chapter 13 Plan and Plan Amendment signed by an attorney or by the debtor "means an original signature, image of an original signature, [or] image with the debtor's signature captured electronically…."). No such requirement exists for proofs of claim. Contrary to the UST's position, the proofs of claim were indeed signed by Ms. Gaines.

### C. Were Resurgent's Procedures for Reviewing Proofs of Claim Proper?

Resurgent asserts that at the time it filed the proofs of claim about which UST complains, there was no requirement that the signer of the claim have personal knowledge of the allegations, and that the Court can draw this inference from the fact it was not until 2016, after the proofs of claim were filed, that the form was amended to require that the individual signing the proof of claim personally review it. If the Court were to adopt that position, it would essentially be ignoring the purpose of the declaration and the import of the instruction. The Court is not willing, as Resurgent suggests, to separate the attestation from the instructions which expressly state (and stated at the time) that the person completing the proof of claim must be the person who signs it. In addition, Resurgent suggests that the new language in Official Form 410 requiring the signer to have personal knowledge indicates that Official Form 10 contained no such requirement. The Court cannot draw that conclusion in light of the explicit instructions noted above for completing Official Form 10. As the UST observed, it would make more sense to conclude that the Rules Committee always intended the purported signer to review the proof of claim he or she was verifying under penalty of perjury, and only amended the language to clear up any ambiguity.

12

Resurgent argues that the UST erroneously analogizes a proof of claim to a sworn affidavit in which a particular witness purports to offer admissible evidence on a matter on which the witness has personal knowledge; in contrast to an affidavit, a proof of claim contains allegations, not evidence.   However, as the UST correctly points out, if the claim is executed in accordance with the Bankruptcy Rules, it is entitled to prima facie validity under Rule 3001(f). The fact that the claim can indeed carry evidentiary weight, coupled with the fact that the form is signed under "penalty of perjury" suggests that there is a presumption that the signer does indeed have personal knowledge of the information contained in the proof of claim.  All of these factors tip the scales in favor of the UST's position that Resurgent was not compliant with applicable rules.

Resurgent contends that it was at least arguably permissible at the time for a creditor or servicer to put in place a process designed to ensure the accuracy of the proofs of claim, and for someone with personal knowledge of that process to authorize others to sign the proofs of claim generated from that system.[3]  The case of *In re Obasi*, 2011 WL 6336153 (Bankr. S.D.N.Y. Dec. 19, 2011), illustrates the flaw in that argument.

The proofs of claim in *Obasi* were filed using the ECF login and password of attorney Lawrence Buckley, and signed electronically in his name, all without Buckley's review.  The attorney testified that the firm's internal procedures provided for the preparation of the proofs of claim by paralegals and support staff followed by a review by a different attorney in the firm. The trustee asserted that the procedures utilized by Buckley and his firm violated the court's

---

[3] Resurgent's assertions about the process of review it employed are beyond the pleadings, and cannot be assumed by the Court as true in the context of this motion to dismiss.

electronic filing system and Bankruptcy Rule 9011.  The attorneys asserted that their activities were not sanctionable, and that even if they were, sanctions could not be imposed because the trustee had not complied with Rule 9011's safe harbor provision.

Buckley and his firm raised several arguments to support their position that their conduct did not violate Rule 9011.  First, they maintained that the Rule's requirement of reasonable inquiry was satisfied by the firm's procedures.  The court disagreed, observing that the firm's argument "ignores the personal nature of an attorney's obligations under Bankruptcy Rule 9011" as the Advisory Committee Notes to the Rule make abundantly clear:  "[t]he person signing, filing, submitting, or advocating a document has a *nondelegable* responsibility to the court…." *In re Obasi*, 2011 WL 6336153, *4 (citing Fed. R. Civ. P. 11 Advisory Committee note (emphasis added)).  Citing several cases, the court concluded that "an attorney's advance authorization to use his signature, without any intention to personally review the pleading prior to filing, does not constitute a reasonable inquiry under Bankruptcy Rule 9011 regardless of the steps taken by the firm." *Obasi*, 2011 WL 6336153, at *5.  Second, Buckley and the law firm questioned the exact meaning of "reasonable inquiry."  The court acknowledged that the inquiry must be made on a case-by-case basis, and that it need not be to the point of certainty to be reasonable. *Id.* (citations omitted).  Under the circumstances of this case, the court noted that while the attorney set out a "checklist" for the associate to follow, he had no way of ensuring that the associate would comply with that list.  "At a minimum, the reasonable inquiry standard requires at least some affirmative investigation on the part of the signer." *Id.*

Next, Buckley argued that sanctions were not appropriate here because there existed evidentiary support for the assertions in the proof of claim.   The court rejected that argument

14

based on precedent  holding that the fact that the information contained in the document bearing

the attorney's signature may have been accurate is not a defense to Rule 9011 sanctions.  In other

words, the focus of the reasonableness inquiry is on the conduct of the signer, not on the result.

The court also made the point that because proofs of claim are central to the bankruptcy process,

the court must be able to rely on the integrity of the claims before it.

        After finding that the firm's practices ran afoul of Bankruptcy Rule 9011, the court

turned to the question of sanctions.  Since no evidence was presented that the trustee complied

with Rule 9011's safe harbor provision, the court denied the request for sanctions.  The court

noted in any event that the firm had taken steps to remedy the defects in its procedure by

including the electronic signature of the attorney actually reviewing the claim, and assumed that

the lawyers would be in compliance with Rule 9011 going forward.  In response to the firm's

suggestion that making the changes in its procedures was not an admission of wrongdoing, the

court clarified its ruling:  "The Court's refusal to impose sanctions is a direct result of Rule

9011's safe harbor provision and not in any way an approval of the patently unacceptable

conduct that is the subject of this decision." *Obasi*, 2011 WL 6336153 n. 15.

        Like in *Obasi*, one of the questions presented here is whether review by the person whose

name appears on the claim is required, or if the process allegedly put in place by Resurgent for

generating and reviewing proofs of claim was sufficient for Ms. Gaines to form a reasonable

belief that the information contained in the claims was true and correct.  The Court agrees with

the reasoning articulated in *Obasi* that despite the elaborate process Resurgent asserted that it

employed, there is no indication that Ms. Gaines knew if, or to what extent, that process was

followed. Furthermore, whether she took any affirmative steps to make sure that the checklist

15

was being followed remains unclear.  On the issue of "reasonable inquiry," the Court agrees with

the UST's position:  it is *inconceivable* that an individual could comply with the instructions for

Official Form 10 without ever examining the claim.

Based on (1) the explicit instructions in the Official Form 10, (2) the reasoning of the

court in *Obasi* (a case with facts that are strikingly similar to those in this case), and (3) the

personal obligation imposed by Rule 9011 on a party whose signature appears on a document,

the Court finds that Resurgent's conduct with respect to the proofs of claim was inconsistent

with applicable Rules.

### D.  Which Remedies, if any, Are Appropriate in Light of Resurgent's Proof of Claim Practices?

The Court now turns to the question of whether Resurgent's conduct is sanctionable, and

whether the other remedies sought by the UST are proper in this instance.  Before addressing the

latter, the Court highlights Bankruptcy Rule 3001(f) which states that "[a] proof of claim

executed and filed in accordance with these rules shall constitute prima facie evidence of the

validity and amount of the claim."  The courts have consistently held that the proper remedy for

failure to comply is that the claim loses its prima facie validity.  *See, e.g., In re Varona,* 388 B.R.

705 (Bankr. E.D. Va. 2008); *In re Armstrong, et al.,* 320 B.R. 97, 106 (Bankr. N.D. Tex. 2005).

Accordingly, if Resurgent's practices violate Rule 3001 as alleged, this would be the appropriate

sanction.  But the UST seeks more.

The cornerstone of the UST's argument in Count I is that § 105(a), by its very text, gives

bankruptcy courts broad power to fashion orders to carry out the provisions of the Bankruptcy

Code and prevent abuses of process.  That section reads:

16

> The court may issue any order, process, or judgment that is
> necessary or appropriate to carry out the provisions of this title.
> No provision of this title providing for the raising of an issue by a
> party in interest shall be construed to preclude the court from, sua
> sponte, taking any action or making any determination necessary
> or appropriate to enforce or implement court orders or rules, or to
> prevent an abuse of process.

Courts have held that the language of §105 is broad enough to empower the court to impose sanctions in conjunction with its inherent power. *In re Gorshtein*, 285 B.R. 118, 124 (Bankr. S.D.N.Y. 2002)(citing *In re Spectee Group, Inc.*, 185 B.R. 146, 155 (Bankr. S.D.N.Y. 1995)). *See also Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)(stating that a primary aspect of a federal court's discretionary inherent power is "the ability to fashion an appropriate sanction for conduct which abuses the judicial process"); *In re Clark*, 223 F. 3d 859, 864 (8th Cir. 2000)(Section 105 "has been interpreted as supporting the inherent authority of the bankruptcy courts to impose civil sanctions for abuses of the bankruptcy process."). However, this inherent power is not unlimited in scope.

Before imposing sanctions under its inherent sanctioning authority or under § 105, a bankruptcy court must make an explicit finding of bad faith or willful misconduct. *In re Parikh*, 508 B.R. 572, 597 (Bankr. E.D.N.Y. 2014)("Sanctions under § 105, § 1927, and the Court's inherent power all require bad faith, and the bad faith analysis under each is generally the same requiring clear and specific findings of bad faith."); *In re Pastran*, 462 B.R. 201, 210 (Bankr. N.D. Tex. 2011)("[R]egardless of whether a bankruptcy court chooses to impose sanctions under its inherent authority or under section 105(a) of the Bankruptcy Code, it still must make a 'specific finding of bad faith.' "); *In re Lehtinen*, 564 F. 3d 1052, 1058 (9th Cir. 2009)(citing *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1197 (9th Cir. 2003)). *See also Wolters*

17

*Kluwer Financial Services, Inc. v. Scivantage*, 564 F. 3d 110, 114 (2d Cir. 2009); *In re Bost*, 341

B.R. 666, 689 (Bankr. E.D. Ark. 2006)("Before exercising its inherent authority to award

sanctions, the Court must find that the party to be sanctioned has 'acted in bad faith, vexatiously,

wantonly, or for oppressive reasons.' ").    As several courts have articulated, the conduct in

question must have been "entirely without color," motivated by "improper purposes," and "more

egregious than mere negligence or recklessness" to justify the imposition of sanctions.  *See, e.g.,*

*Milltex Indus. Corp. v. Jacquard Lace Co.,* 55 F.3d 34, 35 (2d Cir. 1995); *In re Dyer*, 322 F.3d at

1196.  The court in *Wolters Kluwera, supra*, described the two-part test:

> [I]nherent-power sanctions are appropriate only if there is clear
> evidence that the conduct at issue is (1) entirely without color and
> (2) motivated by improper purposes.  Conduct is entirely without
> color when it lacks any legal or factual basis; it is colorable when it
> has some legal and factual support, considered in light of the
> reasonable beliefs of the attorney whose conduct is at issue. … [A]
> finding that conduct is without color or for an improper purpose,
> must be supported by a high degree of specificity in the factual
> findings.

564 F. 3d at 114 (citations omitted).

The UST makes much ado about the distinction between the court's authority to impose

sanctions under § 105 and its inherent power.  The Court holds, as others have, that § 105

intended to imbue the bankruptcy courts with the inherent power to sanction for *bad faith*

conduct as recognized by the Supreme Court in *Chambers*.  *See In re Courtesy Inns, Ltd., Inc.*,

40 F.3d 1084, 1089 (10th Cir. 1994).

Resurgent argues that the UST has not alleged that Resurgent knowingly violated

applicable law in regard to its proof of claim practices, and therefore, sanctions cannot be

imposed.  The UST counters that allegations of lack of good faith, and of bad faith appear

throughout the Complaint.  The truth lies somewhere in between.  While the UST does allege

bad faith in Count II in connection with Resurgent's practice of filing stale claims, there is no

allegation that Resurgent acted in bad faith in connection with its "robo-signing" practice.

Absent that allegation, the Court does not have the authority to impose sanctions.

        The UST also argues that its allegations of abuse of process give rise to the reasonable

inference that Resurgent acted in bad faith.  Specifically, the UST cites to the fact that during a

Rule 2004 examination, Resurgent's witnesses testified that the company had filed only 1,600

proofs of claim in 2014 bearing Ms. Gaines' signature and that she had not reviewed.  After the

UST requested documentation for claims filed in 2014, however, Resurgent admitted that the

number was in fact 53,994 claims.  While the Court acknowledges that the discrepancy is indeed

substantial, it sheds more light on Resurgent's deficiencies as they relate to due diligence in

discovery and less on its conduct with regard to filing proofs of claim.  In the Court's view,

Resurgent's miscalculation during the discovery process does not substantiate an inference of

bad faith in the preparation and filing of the proofs of claim.  Again, without an allegation of the

requisite bad faith, the imposition of sanctions is inappropriate.

        Resurgent contends that the imposition of sanctions is also inappropriate in cases such as

this one where at least a colorable argument can be made that its practices complied with the

rules and instructions applicable at the time (*i.e.*, before Official Form 410 took effect).  The

UST does not allege that Resurgent knew that its practices violated any applicable law.  At the

very least, Resurgent argues, Official Form 10 was ambiguous, given the wording of the

attestation, as to whether the signer of the proof of claim had to personally examine the

information in the claim.  Without condoning Resurgent's conduct, the Court agrees that the

imposition of sanctions is inappropriate here because the conduct alleged fails the two-part test described above, namely that it is entirely without color and motivated by improper purposes.

A court's authority under § 105 only allows a court to impose civil sanctions which are compensatory or designed to coerce compliance. *In re Dyer,* 322 F.3d at 1192. As Resurgent notes, the relief sought by the UST is not remedial in nature because he has not alleged that he or anyone else has suffered any harm or injury as a result of Resurgent's practices. Put another way, he has not alleged that the information in any of the proofs of claim was inaccurate or that the treatment of any of them would have been different had they been personally reviewed by Ms. Gaines. The awarding of monetary relief, therefore, is not appropriate under these facts.

There is no legal justification for granting the UST's request for injunctive relief with respect to Count 1. To obtain such relief, the plaintiff must establish a real and immediate threat that he will again suffer similar injury in the future. *In re Stewart*, 647 F.3d 553, 557 (5th Cir. 2011); *see also O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)("[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief."); *Park v. Forest Serv. of U.S.,* 205 F.3d 1034, 1037 (8th Cir. 2000)(to obtain injunctive relief, there must be a showing that the plaintiff faces a threat of ongoing or future harm). Resurgent has stated both in writing and at oral argument that it has stopped engaging in the signing practices to which the UST objects. The UST does not refute that. Although Resurgent's modification of its practices is, arguably, an admission of guilt or at the very least, an acknowledgment that its practices were deficient, the UST has given the Court no reason to believe that its prior practices will continue. More importantly, he has not alleged that. Therefore, the injunctive relief requested by the UST is not appropriate. Similarly, the UST's requests for other forms of prospective relief, including

20

that Resurgent's ECF credentials be revoked or suspended, is unwarranted given the absence of an allegation that Resurgent is continuing its objectionable filing practices.

In conclusion, the Court finds that Resurgent's practice of robo-signing thousands of claims, while not consistent with applicable rules, is not subject to the sanctions sought by the UST.  Count I is, therefore, dismissed.

### III. Resurgent's Filing of Proofs of Claim Barred by The Applicable Statute of Limitations is not Sanctionable Conduct

#### A. Plaintiff's Contentions and Generally Applicable Principles

In Count II, the UST seeks sanctions against Resurgent for knowingly filing claims barred by the applicable statute of limitations. He alleges that Resurgent has filed thousands of such claims in districts across the country and recovered substantial sums on them.  The UST characterizes the practice as abusive, claiming that it improperly shifts the burden of assessing the validity of such claims onto debtors and trustees, imposing unnecessary costs on them, reallocates distributions away from creditors with valid claims and relies upon failure to object to obtain recoveries that could not be realized in any other context.

He argues that the filing of such claims without a good faith belief in their enforceability constitutes a violation of Rule 11 and Rule 9011 of the Federal Rules of Bankruptcy Procedure. Acknowledging, however, that he has failed to abide by the safe harbor provisions of the rule, he seeks sanctions under § 105, arguing that Rule 9011 is not "up to the task" because of the multiplicity of violations, costs and other burdens of objecting to the claims and the ability of the claimant to withdraw the claim after demand.  He seeks a variety of sanctions under § 105 and the Court's inherent power, including:  unspecified remediation and monetary relief; injunctive

relief prohibiting Resurgent from filing claims as to which it has no good faith response to the statute of limitations defense or in the alternative, an affirmative injunction compelling Resurgent to submit a separate certification that claims are not barred; and the appointment of an independent monitor to insure compliance with any remedial provisions of the Court's order. For the reasons that follow, the Court concludes that the filing of a stale proof of claim in a bankruptcy proceeding, even by an entity that knows the claim is barred, is not sanctionable conduct and, even if it were, the remedies sought by the UST are inconsistent with the Bankruptcy Code and Rules and otherwise inappropriate.

The Bankruptcy Code authorizes creditors to file proofs of claim in bankruptcy cases.  11 U.S.C. § 501(a).  A creditor is defined as an entity holding a claim against the debtor that arose before the date of the filing of the petition.  11 U.S.C. § 101(10)(A).  A claim is defined to include a right to payment even if such right is disputed, contingent or unliquidated.  11 U.S.C. § 101(5)(A).  A claim is deemed allowed unless a party in interest objects.  11 U.S.C. § 502(a). The grounds for objection to claims are set forth in subsection (b) of § 502 and include that the claim is unenforceable against the debtor under applicable law.  11 U.S.C. § 502(b)(1). Accordingly, a valid statute of limitations defense, if asserted, would result in disallowance of the claim.  *In re Feggins*, 535 B.R. 862, 867 (Bankr. M.D. Ala. 2015).  A proof of claim must conform to the requirements of the Bankruptcy Rules and substantially conform to the appropriate Official Form.  If a creditor complies with those procedural requirements, the claim is entitled to a presumption as to its validity and amount.  Fed. R. Bankr. P. 3001(f).  A party in interest objecting to the claim must rebut that presumption.  A claim that does not comply is not entitled to the benefit of the presumption.  Additional requirements exist for certain claims,

including claims on open-end or revolving consumer credit agreements.    Such creditors are required to file a statement with five specific pieces of information about the account.  Fed. R. Bankr. P. 3001(c)(3)(A).

### B.  Stale Claims Are Nonetheless Claims Under the Code

Initially, the UST suggests that claims barred by the statute of limitations are not claims at all and not entitled to be filed under § 501.   In support, he cites language from the United States Supreme Court's opinion in *Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552 (1990), to the effect that "a right to payment is nothing more nor less than an enforceable obligation."  This argument has been almost universally rejected.   Courts examining the language in *Davenport* have concluded the Court used the term "enforceable" only in a descriptive sense and was not holding that the claim must be enforceable in order to be encompassed by the Code's definitions of "claim" and "debt".   *See Owens v. LVNV Funding L.L.C.*, 832 F.3d 726 (7th Cir. 2016) (notes statement in *Davenport* taken out of context and "taken in context, it is apparent that the statement was not intended to address the issue of whether a 'claim' includes only enforceable obligations."); *Johnson v. Midland Funding, L.L.C.*, 528 B.R. 462, 466-67 (S.D. Ala. 2015), reversed on other grounds, 823 F.3d 1334 (11th Cir. 2016) (noting that *Davenport* " cannot possibly be read for the proposition that a 'right to payment' . . . ceases to exist the moment the statute of limitations expires").   The United States Supreme Court has itself repudiated this interpretation of *Davenport*.  *Midland Funding L.L.C. v. Johnson*, ___ U.S. ___, 137 S. Ct. 1407, 1412 (2017).   Moreover, as this Court notes below, the validity of claims asserted against the debtor is determined by state law and under most state regimes, the expiration of the statute of limitations does not extinguish the claim and a right to

23

payment remains subject to the assertion of a statute of limitations defense, which is subject to waiver if not timely asserted. To hold that such claims may not be filed under § 501 would contradict these basic principles. *Johnson*, 528 B.R. at 467. In addition, such claims could be proven, but not allowed, under the prior Bankruptcy Act and nothing in the Code or the legislative history suggests that Congress intended to change that practice. In accordance with the principle that Congress is presumed to legislate against that background and that the court should not assume a change was intended without a clear indication, this Court declines to conclude that such claims may not be filed under the Bankruptcy Code. *In re Keeler*, 440 B.R. 354, 361 (Bankr. E.D. Pa. 2009); *Johnson*, 528 B.R. at 469. Also, the definition of claim contained in the Bankruptcy Code is extremely broad and specifically includes disputed claims and other claims not presently enforceable such as contingent and unliquidated claims. *Midland*, 137 S. Ct. at 1412; *Owens*, 832 F.3d at 733-34; *Johnson*, 528 B.R. at 469; *Keeler*, 440 B.R. at 363. Section 502 of the Code identifies the grounds for objection to filed claims. One of them, § 502(b)(1), is that the claim is unenforceable against the debtor under applicable law. As numerous other courts have observed, if an unenforceable claim were not a claim to begin with, it would not be necessary to object to it on such grounds. To hold that only claims enforceable under state law are claims for Bankruptcy Code purposes would be to render § 502(b)(1) as surplusage. *Midland*, 137 S. Ct. at 1412; *Owens*, 832 F.3d at 733; *Johnson*, 528 B.R. at 468. More to the point, after considering several of these issues, the Supreme Court in *Midland* specifically rejected the notion that a claim subject to a valid statute of limitations defense is not a claim for purposes of the Bankruptcy Code. *Midland*, 137 S. Ct. at 1412.

24

**C.  The Filing of Stale Claims Is Not Barred, But Authorized By the Code and Rules**

After considering the applicable state law and the provisions of the Code and rules with regard to the filing of stale proofs of claim, this Court concludes that creditors have the right to file such claims and that doing so is not sanctionable.  As the Supreme Court itself noted in *Midland*, citing examples from numerous jurisdictions, in most states the expiration of the statute of limitations does not extinguish a claim and the creditor retains a right to payment.  It does of course subject the claim to the assertion that it is barred but that remains an affirmative defense which must be plead and is waived if not asserted.  *See Midland*, 137 S. Ct. at 1411, 1412.  This is the law in the state of Missouri.  *See Carranza v. Midland Funding, L.L.C.*, 2015 WL 5008462 at *3 (E.D. Mo. Aug. 20, 2015).  Accordingly, most of the courts that have considered this situation have concluded that if, under the applicable state law the underlying claim is not extinguished by the expiration of the statute of limitations, proof of such a claim may be filed under the Bankruptcy Code.  *Carranza*, 2015 WL 5008462 at *3 ("Accordingly, under relevant state law, defendant held a valid, albeit time-barred debt with a consequent entitlement under the Bankruptcy Code and Rules to file a proof of claim, even though it could not bring suit in state court and obtain a judicial recovery against plaintiffs due to the staleness of the claim."); *see also Johnson*, 528 B.R. at 465; *Keeler*, 440 B.R. at 366; *In re Freeman*, 540 B.R. 129, 142 (Bankr. E.D. Pa. 2015).

The UST cites no provision of the Bankruptcy Code or the Bankruptcy Rules which specifically prohibits such filings.  As a matter of fact, the rules appear to contemplate the filing of such claims but approach the matter by requiring the claimant to provide certain specific

25

information designed to assist the trustee and debtor to determine the applicability of the statute

of limitations defense. *See* Rule 3001(c)(3). As noted by the United States Supreme Court in

*Midland*, the Advisory Committee on Bankruptcy Rules specifically considered adopting a

position much like that asserted by the UST (for example, requiring a certification with the filing

of the claim that it was not barred) but declined to do so. Notwithstanding the UST's

protestation to the contrary, the record demonstrates that it did so because it believed that

imposing such a requirement would be inconsistent with the Code and Rules. *See* Agenda Book

for Meeting 86-87 (March 26-27, 2009). The Committee chose not to require a creditor's pre-

filing investigation to include the availability of affirmative defenses. *Midland*, 137 S. Ct. at

1415.

Also as noted by the Supreme Court in *Midland*, in only one case in which a court has

actually considered the question whether the filing of stale proofs of claim is sanctionable

behavior have sanctions been imposed. *See In re Sekema*, 523 B.R. 651 (Bankr. N.D. Ind. 2015).

In all other cases, the courts have held to the contrary. *See Freeman*, 540 B.R. at 143-144; *In re*

*Jenkins*, 538 B.R. 129, 134-136 (Bankr. N.D. Ala. 2015); *Keeler*, 440 B.R. at 366-369; *In re*

*Andrews*, 394 B.R. 384, 387-388 (Bankr. E.D.N.C. 2008). All of the other cases cited by the

UST, insofar as they address Rule 9011 or § 105, do so in dicta. They arise in the context of an

alleged violation of the FDCPA and discuss the applicability of the Rules and the Code only in

passing. None of such cases actually analyzes the applicability of Rule 9011 or § 105 in this

context. As to the few that made such comments, in several instances, the circuit courts in which

such courts are located have subsequently taken a different position. *See, e.g., Owens*, 832 F.3d

26

at 730-34; *Johnson v. Midland Funding, LLC*, 823 F.3d 1334 (11th Cir. 2016), reversed on other

grounds, 137 S. Ct. 1407 (2017).

### D.  Rule 9011 Does Not Bar the Filing of Stale Claims

The UST argues that the prosecution of a claim known to be barred by the statute of

limitations is a violation of Rule 11 and that Rule 9011 should be similarly interpreted.

Recognizing, however, that he cannot invoke Rule 9011 (except as to the claims filed in the two

bankruptcy cases pending before this Court as to which Resurgent has waived the safe harbor

protections) he then asks this Court to utilize § 105 or its inherent powers to craft a remedy.

There are several problems with the UST's position.

The Court does not take issue with the assertion that Rule 9011 is applicable to proofs of

claim, *see Freeman*, 540 B.R. at 137, or that it should be interpreted as Rule 11 has been.

Accordingly, the Court agrees with the UST that the filing of a proof of claim, while permitted,

can have consequences.  To the extent Resurgent denies this, the Court disagrees.  But, for all the

reasons indicated, this Court concludes that the mere filing of a claim barred by the applicable

statute of limitations, even by an entity with knowledge of the bar and without a good faith basis

for contravening the defense, is not itself sanctionable if the expiration of the statute of

limitations does not extinguish the claim under the applicable law.

There are two principle bases for the imposition of sanctions under Rule 9011.  *In re*

*Boyd*, 143 B.R. 237, 239 (Bankr. C.D. Cal. 1992).  Rule 9011(b)(1) authorizes the Court to

impose sanctions on an entity filing a pleading for an improper purpose.  Rule 9011(b)(2)

authorizes the imposition of sanctions for the assertion of claims or defenses not warranted by

existing law or by a non-frivolous argument for the extension, modification or reversal of existing law.

The UST does not appear to actually allege that the claims were filed for an improper purpose so as to be proscribed by Rule 9011(b)(1).  This Court may, therefore, presume, as have others, that such claims are not filed for an improper purpose, but for the same purpose as any other proof of claim is filed, specifically to seek a recovery against the bankruptcy estate.  *See Freeman*, 540 B.R. at 143; *Jenkins*, 538 B.R. at 135.  It is also of note that in *Midland,* in considering the applicability of the proscriptions of the FDCPA, the United States Supreme Court specifically held that such claims were not unfair, unconscionable, false, misleading or deceptive.  That holding significantly undermines any assertions that they are improper.

The UST's position is predicated upon the assumption that the mere filing of a claim barred by the limitations statute is sanctionable if the filer lacks a good faith belief in its enforceability.  Resurgent, however, appears to be correct in asserting that the law rather is that Rule 11is not violated by the mere filing of such claims but by the continued assertion of such claims after the statute of limitation defense has been raised.  That this is the position of the Eighth Circuit can be gleaned from an examination of the court's opinion in *Hoover v. Armco, Inc.*, 915 F.2d 355, 357 (8th Cir. 1990), in which the  court holds:

> Asserting a time-barred claim alone does not justify an award of attorney's fees.  The statute of limitations is an affirmative defense the defendant must raise, Fed. R. Civ. P. 8(c) and Hoover did not have to anticipate Armco would raise it.  Therefore, merely pleading the time-barred demotion claim was not bad faith.

The court affirmed the imposition of sanctions because the statute of limitations defense had been raised in an answer to the original complaint and the plaintiff continued to assert the time-

barred claim in subsequent amended complaints notwithstanding.  The case of *Aetna Casualty &*
*Surety Company v. Fernandez*, 830 F.2d 952 (8th Cir. 1987), cited by the UST does not establish
a contrary rule.  In that case, the court held that there was adequate warning to plaintiff of the
applicability of a statute defense and plaintiff continued to assert the claim notwithstanding.
Bankruptcy courts have applied the same rule in the context of Rule 9011.  *Jenkins*, 538 B.R. at
134; *Keeler*, 440 B.R. at 367; *In re Varona*, 388 B.R. 705, 711, n. 5 (Bankr. E.D. Va. 2008).

### E.  Civil Litigation Analogy Not Applicable in Bankruptcy

Even if the rule outside of the bankruptcy court is as the UST alleges, bankruptcy is
different for numerous reasons.  The different context would justify the application of a different
rule.  This, too, the United States Supreme Court discusses extensively in *Midland*.  *See Midland*,
137 S. Ct. at 1413.  First, the claim dispute arises in the context of an existing proceeding
initiated by the debtor in which the debtor is, in the vast majority of the cases, already
represented by counsel.  Second, an independent trustee exists in the case whose obligation it is
to object to claims when some purpose would be served thereby.  Third, the failure to respond to
the proof of claim and its subsequent allowance, does not result in any judgment against the
debtor but merely the allowance of the claim which, depending on the circumstances, may have
little or no impact on the debtor.  Fourth, it is not burdensome or difficult to object to such claims
and the rules require the claimant to provide certain information which can facilitate the
determination of the applicability of the limitations defense.  *See also Gatewood v. CP Medical,*
*L.L.C. (In re Gatewood)*, 533 B.R. 905, 908-910 (8th Cir. B.A.P. 2015) (citing *In re Dunaway*,
531 B.R. 267 (Bankr. W.D. Mo. 2015)); *Carranza*, 2015 WL 5008462 at *8-9; *Broadrick v.*
*LVNV Funding L.L.C. (In re Broadrick),* 532 B.R. 60, 69-74 (Bankr M.D. Tn. 2015).  The Court

29

recognizes, as did the dissenters in *Midland*, that in some cases certain of these differences are more apparent than real.  On the whole, however, the Court believes that they sufficiently distinguish the bankruptcy process from a state court lawsuit as to warrant a rule peculiar to the context.

### F.  Arguably Legal Conduct is Not Sanctionable Under § 105 or This Court's Inherent Power

Even if some provision of the bankruptcy rules were appropriately construed to prohibit the filing of such claims, it would not follow that the filing of the claims necessitated an award of sanctions.  *Smith Int'l v. Texas Commerce Bank*, 844 F.2d 1193, 1199 (5th Cir. 1988) (fact that plaintiffs and counsel were mistaken as to law did not mean that mistake was unreasonable and warranted imposition of sanctions.)  As noted above, the use of § 105 or this Court's inherent power to sanction a litigant requires a demonstration of specific bad faith.  With respect to the filing of stale claims, the UST urges that Resurgent's alleged practice of not filing such claims in certain jurisdictions or in cases in which certain trustees serve is an indication of bad faith.  On the contrary, it is a reflection of Resurgent's attempt to determine the specific law applicable in the jurisdiction or case in which it proposes to file a proof of claim and to conform its conduct accordingly.

Also as noted above, in order to be sanctionable, conduct must be completely without color of law.  That is not the case here.  There is a substantial difference of opinion among the courts on the ability of a litigant to file stale claims in bankruptcy cases, with the majority litigating the question actually holding that such claims may be filed.  Because under those circumstances, a filer can clearly have a reasonable good faith argument to support its position

30

that such claims may be legitimately asserted, an award of sanctions is not appropriate. Many of the courts considering and declining to award sanctions in these circumstances have specifically so noted and cited this factor as a reason for refusing to make such an award. *See Andrews*, 394 B.R. at 388 ("Whether this court agrees or disagrees with those cases, there was a substantial body of existing case law upon which Roundup and B-Real reasonably relied, and because of their reasonable reliance, Rule 9011 sanctions are not justified."); *Freeman*, 540 B.R. at 144 ("Sanctions should not be imposed for putting forward a claim or argument if circuit case law is unsettled, but there is support in this circuit or other circuits for the position taken."); *Okoampa-Ahoofe v. Johnson & Higgins*, 2000 WL 1471552 at *6 (S.D.N.Y. Sept. 29, 2000), citing *Securities Indus. Ass'n v. Clarke*, 898 F.2d 318, 321 (2d Cir. 1990) ("A distinction must be drawn between a position which is merely losing, and one which is both losing and sanctionable."). This Court said likewise in *Dunaway*, albeit in dicta, observing that "the present statute and procedural rules do not preclude such filings by creditors." *Dunaway*, 531 B.R. at 274. It would be somewhat anomalous for this Court to impose sanctions on a litigant for doing precisely what this Court said in *Dunaway* it had a right to do.

### G.  The Remedies Sought Are Not Appropriate

It follows that if the Court has concluded that Resurgent's conduct is not sanctionable, it need spend little time discussing the specific remedies requested by the UST. However, the Court feels that some comments about the source and nature of the remedies requested is appropriate. As noted, the UST relies upon Rule 9011 or an analogy therefrom to attempt to establish that Resurgent's conduct should be sanctioned. However, he admits as he must, that Rule 9011 cannot serve as the source of sanctioning authority as he has not complied with the

safe harbor provisions.    Notwithstanding his failure to do so, he asks this Court to sanction Resurgent relying upon the provisions of § 105 or this Court's inherent authority to craft a remedy.   Resurgent argues that would effectively circumvent the limitations on Rule 9011.   The Eighth Circuit Bankruptcy Appellate Panel has held that the Court should not use § 105 in a way which circumvents provisions of the Bankruptcy Code or Rules.   *See In re Grueneich*, 400 B.R. 680 (B.A.P. 8th Cir. 2009).   When the Bankruptcy Code and Rules contain specific remedies for violation of a specific section of the Code or Rules, the Court should not use § 105 to create additional remedies. *See In re Scrivner*, 535 F.3d 1258 (10th Cir. 2008).   Several courts have applied this principle in this same context.   *See In re Varona*, 388 B.R. at 716; *Keeler*, 440 B.R. at 366-367 ("Given that § 501(a) authorizes every creditor holding a claim to file a proof of claim, even if that claim is later disallowed under § 502(b), § 105(a) does not state a cause of action to sanction such a filing.").

The UST argues that the Court may rely upon § 105 if the rules are "not up to the task," citing *Chambers*.   What the UST apparently means by the rule not being up to the task is that he and others must raise this question in each individual instance in which such a claim has been filed giving Resurgent a right to withdraw the claim before sanctions may be assessed.   But if Resurgent has a right to file such claims, the fact that it has done so thousands of times does not make its conduct sanctionable.   In this instance, the whole is not greater than the sum of the parts.   With respect to the remedy, the UST is really arguing that it is inconvenient for him to follow the rules.   There is no question that Rule 9011 is designed for situations like this and has been applied to proofs of claim.   Being designed for such a situation, it should be used and the Court should not use § 105 or its inherent powers to circumvent the built-in limitations on its use.

32

None of the cases cited by the UST in support of this principle apply to a case in which the rule was designed to deal with the situation, but multiple instances of violation render it inconvenient or more costly to do so.

While Resurgent's conduct is unsettling and perhaps even distasteful or unseemly in some respects, the behavior is not sanctionable and may not be treated as such until changes are made either by Congress or the Rules Committee.  Courts have made similar observations in refusing to award sanctions.  *See Keeler*, 440 B.R. at 368; *Carranza*, 2015 WL 5008462 at *8; *Freeman*, 540 B.R. at 145 ("The parties that decry the practice of filing stale claims as an abuse of the bankruptcy claims allowance system may be correct.  Certainly some courts agree.  The bankruptcy court's inability to sanction parties that file stale proofs of claim under Fed. R. Bankr. P. 9011 may frustrate the parties compelled to undertake the obligation of objecting to stale claims and the courts in which such claims were filed.  However, given the present state of the law, there is a respectable argument that claimants are entitled to file stale claims because the statute of limitations is a waivable affirmative defense.  As a result, Rule 9011 is not the proper vehicle to remedy the perceived problem . . . if the practice of filing stale proofs of claim is improper and should be stopped, some means other than Rule 9011 must be employed by those with the authority to make that judgment. . . .").  Even the Devil gets the benefit of law.

IV.     **Filing of Claims Not Compliant With Rule 3001(c)**

A. **Allegations and Applicable Law**

The UST alleges in the Complaint that Resurgent engages in a practice of intentionally filing thousands of proofs of claims that do not comply with Bankruptcy Rule 3001(c) in that the claimant fails to 1) include information on open-end or revolving credit agreements or 2) attach

33

the original writing on which the claims are based.  He asserts that this practice constitutes a systematic abuse of the bankruptcy process and further, that the other Defendants are liable because Resurgent acted as their agent-in-fact.  The UST seeks sanctions in the form of remediation and monetary relief, injunctive relief prohibiting Defendants from filing non-compliant proofs of claim, and the appointment of an independent monitor to ensure future compliance.

Bankruptcy Rule 3001 governs the form and content of a proof of claim.  A claim for debt based on a writing other than an open-end or revolving consumer credit agreement must include a copy of the writing.  Fed. R. Bankr. P. 3001(c)(1).  A claim based on an open-end or revolving consumer credit agreement must include a statement with specific account information, including the name of the entity from whom the creditor purchased the account, the date of the account holder's last transaction, and the date on which the account was charged to profit and loss.  Fed. R. Bankr. P. Rule 3001(c)(3)(A).

Nowhere in the pleadings does Resurgent deny that it failed to meet the requirements of Rule 3001(c).  It simply urges dismissal of Count III because the UST is seeking relief that is beyond the scope of the relief expressly permitted by the Rules, and it claims that the UST does not specifically address this practice with respect to any proofs of claim other than the seven filed in these bankruptcy cases. Therefore, the Court's analysis will focus on the appropriate remedy.  For the reasons discussed below, the Court agrees with Resurgent that the remedies requested by the UST are inconsistent with the Bankruptcy Code and rules, and as a result, cannot be granted.

**B.   Bankruptcy Rule 3001 Dictates the Remedy**

Bankruptcy Rule 3001 sets out the sanctions for failure to comply with its documentation

requirements:

> If the holder of a claim fails to provide any information required by this
> subdivision (c), the court may, after notice and hearing, take either or both
> of the following actions:
>
> (i)   preclude the holder from presenting the omitted information, in
>        any form, as evidence in any contested matter or adversary
>        proceeding in the case, unless the court determines that the failure
>        was substantially justified or is harmless; or
> (ii)  award other appropriate relief, including reasonable expenses and
>        attorney's fees caused by the failure.

Fed. R. Bankr. P. 3001(c)(2)(D).

In addition, as noted above, Rule 3001(f) provides that a properly-executed and filed

proof of claim constitutes prima facie evidence of its validity and amount.   Accordingly, the

remedy for failure to comply, besides those enumerated in Rule 3001(c), is to strip the claim of

its prima facie validity.  *See In re Sears*, 863 F.3d 973, 979 (8th Cir. 2017)("But a failure to

itemize interest in accordance with the rules means only that the proof of claim is not prima facie

evidence of the claim's validity and amount."); *In re Brunson*, 486 B.R. 759, 769 (Bankr. N.D.

Tex. 2013)("[c]ourts almost uniformly agree that the failure to attach proper documentation

sufficient under Rule 3001 will strip the claim of its *prima facie* validity…."); *In re Cluff,* 313

B.R. 323, 331 (Bankr. D. Utah 2004)("failure to comply with the documentation requirements in

Rule 3001(c) is an evidentiary defect that only deprives a claim of its *prima facie* validity.").

### C.  The Term "Other Appropriate Relief" is Not Without Limitations

The term "other appropriate relief" as used in Rule 3001(c)(2) is not defined.  Under customary rules of construction, "other appropriate relief" is construed to allow a remedy of the same character as the specifically enumerated example of "reasonable expenses and attorney's fees caused by the failure."  *In re Reynolds,* 470 B.R. 138, 144 (Bankr. D. Colo. 2012)(citations omitted).  For that reason, courts have refused to grant relief outside that category.  *See, e.g., In re Howard,* 563 B.R. 308 (Bankr. N.D. Cal. 2016)(deeming mortgage current did not constitute "other appropriate relief"); *In re Tollios,* 491 B.R. 886 (Bankr. N.D. Ill. 2013)(eliminating debtor's contractual obligation to pay property taxes was not "other appropriate relief").   What is key to the analysis, however, is the element of causation that is expressly provided in Rule 3001(c)(2)(D)(ii).   While the Rule may allow the courts to fashion a remedy other than the exclusion of evidence and the award of attorneys' fees, the remedy must bear a rational relationship to the violation of the rule and cannot give the debtor a windfall for a technical violation that caused no harm.  *Tollios*, 491 B.R. at 892-93.

It is well-established that "other appropriate relief" does not include the disallowance of a claim.  *See, e.g., In re Sheedy,* 567 B.R. 597 (Bankr. W.D. Wash. 2017)("But a failure to attach sufficient documentation is not a basis for disallowance of a claim."); *In re Maddux*, 2016 WL 8808176, *8 (Bankr. E.D. Va. Dec. 1, 2016)(mere non-compliance with the informational requirements of Rule 3001 should not be, in and of itself, grounds to disallow the claim); *In re Khatibi*, 2014 WL 2617280 *5 (M.D. Ga. June 12, 2014)("But the Rule does not provide authority to deny a creditor's claim based solely on the creditor's failure to attach to its proof of claim documentation that is fully compliant with Rule 3001(c).")(citations omitted); *Reynolds*,

36

470 B.R. at 145 ("Because claim disallowance falls outside of the remedies enumerated under

Rule 3001(c)(2)(D), the rule precludes such a remedy."). The Advisory Committee Note could

not be more clear: "Failure to provide the required information does not itself constitute a

ground for disallowance of a claim." Fed. R. Bankr. P. 3001 Advisory Committee Note (2011).

Even if a proof of claim is not entitled to a presumption of prima facie validity, that would not

suffice to disallow the claim. *In re Lewis-Stanback*, 2011 WL 2560327 (Bankr. D.C. June 28,

2011)(citations omitted).

In *In re Dove-Nation*, 318 B.R. 147 (B.A.P. 8th Cir. 2004), the claims to which the debtor

objected identified the debts, contained account summaries, and included explanations as to why

additional documentation was not attached.  The debtor objected to the claims on the grounds

that they did not comply with Rule 3001(c) insofar as they lacked the original or duplicate

writings on which the claims were based.   The debtor argued further that the claims could be

disallowed for that reason.   The Eighth Circuit BAP concluded that the claims complied

substantially with the rules and the instructions on the proof of claim form, and thus, constituted

prima facie evidence of their validity and amount.  "However," the court went on to state, "even

if the claims had not substantially complied with Rule 3001, the claims are still allowed claims

under Section 502 of the Bankruptcy Code unless the Debtor establishes an exception under

Section 502(b)." *Id.* at 152.   *See also Travelers Casualty & Surety Co. of America v. Pacific

Gas & Electric Co.*, 127 S. Ct. 1199, 1200 (2007)(under §502(b), the bankruptcy court shall

allow a creditor's claim except to the extent that the claim implicates any of nine enumerated

exceptions);  *In re Campbell*, 336 B.R. 430, 436 (B.A.P. 9th Cir. 2005)(non-compliance with

Rule 3001(c) is not one of the statutory grounds for disallowance); *Cluff*, 313 B.R. at 331

37

("Courts have no discretion to disallow claims for reasons beyond those stated in the statute.")(citations omitted).

The Eighth Circuit recently addressed this very issue:

> A claimant's failure to comply with Rule 3001(c)(2)(A) or Official Form 10, however, is not by itself a reason to disallow a claim. Section 502(b) enumerates the grounds on which a proof of claim may be disallowed, and non-compliance with Rule 3001 is not one of them. The bankruptcy court has authority to sanction a creditor who fails to submit supporting information as directed by the rules of procedure. But a failure to itemize interest in accordance with the rules means only that the proof of claim is not *prima facie* evidence of the claim's validity and amount.

*Sears*, 863 F.3d at 979 (citations omitted).

The UST seeks remediation and monetary relief to the Debtors, the estate, and the bankruptcy system. Although he does not state the precise nature of such relief, the only possible meanings that can be assigned to the UST's request are 1) distributions paid on claims that did not comply with the documentation requirements of Rule 3001, and 2) fees and expenses incurred solely as a result of Resurgent's conduct. Neither is warranted here. Resurgent contends that remediation effectively constitutes disallowance, and disallowance is not permissible here because it is beyond the scope of Rule 3001. This Court agrees. As noted above, §502(b) provides the exclusive grounds for claim disallowance, and incomplete or inaccurate documentation as required by Rule 3001 is not one of them. To permit remediation would be improper.

The award of money damages requires that the court find a causation nexus between the creditor's failure to adequately document its claim and the fees incurred. *In re Dunlap*, 2013 WL 5497047 *2 (Bankr. D. Colo. Oct. 3, 2013)("[T]he fees incurred by the Debtor must have been

38

'caused' by the failure to provide documentation.).   Resurgent correctly observes that the UST has failed to allege that any fees or expenses were incurred by debtors or trustees in their determination of whether to object to Resurgent's proofs of claims, other than those typically incurred in their review process, in the thousands of cases for which the UST seeks relief. Therefore, those fees were not caused by the failure to comply and recovery of those fees is not authorized by the rule.

### D.  The Exercise of the Court's §105 Authority and Inherent Powers is Inappropriate

As previously noted, neither § 105 nor the court's inherent power can be used to circumvent a specific provision of the Bankruptcy Code or Rules.  *Grueneich*, 400 B.R. at 685; *Scrivner*, 535 F. 3d at 1263 ("To allow the bankruptcy court, through principles of equity, to grant any more or less than what the clear language of [a statute] mandates would be tantamount to judicial legislation…."); *In re Olson*, 120 F.3d 98, 102 (8th Cir. 1997)("[E]quitable powers are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules.")(citations omitted).   The UST does not directly refute that, but instead argues that "appropriate relief" falls short in a case such as this one that involves Rule 3001 violations on a large-scale, systematic basis.  He characterizes Resurgent's conduct as "the type of 'abuse of process' that section 105(a) was enacted to address."

The recent case of *In re Bavelis*, 563 B.R. 672 (Bankr. S.D. Ohio 2017), is a good illustration of a court imposing sanctions under § 105 when neither the statute nor the rules are "up to the task."  There,  the claimant demonstrated a long-time pattern of deception designed to conceal the assignment of its interest in the note and security agreement on which its claim was

based.  The claimant and his counsel made false representations during discovery, intentionally withholding relevant documents and falsely stating that no responsive documents existed.  They argued that they could not be held liable for their actions because the debtor did not seek discovery sanctions under Bankruptcy Rule 7037. The court imposed sanctions under § 105 and its inherent authority, however, because that Rule was "not up to the task": "But even a moment's thought should reveal that Bankruptcy Rule 7037 is inadequate to address a situation where, as here, the party being sanctioned not only failed to produce a document, but also made misrepresentations both to opposing counsel and the Court that were designed to conceal its existence." *Id.* at 690.

In *Bavelis*, no Bankruptcy Rule existed that could adequately address the claimant's infractions under the circumstances.  Such is not the case here.  Resurgent's conduct fits squarely within the remedies provided in Rule 3001.  If Resurgent failed to satisfy the requirements of Rule 3001(c)(1) and (c)(3), then the remedies enumerated in Rule 3001(c)(2)(D) apply, and Resurgent's claims would be stripped of their prima facie validity and Resurgent could be subject to an evidentiary bar and a fee award.  It is that straightforward.  The UST has not cited any authority to support his claim that the remedies provided in Rule 3001 and the disallowance requirements provided in § 502 do not apply when multiple violations occur.  Therefore, this Court cannot circumvent them by exercising its powers under § 105.

The UST relies on one case, *In re Gravel*, 556 B.R. 561 (Bankr. D. Vt. 2016), to support its argument that this Court can impose monetary sanctions as "other appropriate relief" under Rule 3001 by exercising its § 105 authority.  The court in that case had entered an order determining that the debtors were current on their mortgage payments and charges.  Following

40

the entry of the order, the mortgage company sent the debtors a statement assessing property inspection fees.   The trustee filed a motion for contempt and sanctions, asserting that the mortgage company sent the statement in flagrant violation of the order, and without filing the notice required under Rule 3002.1.   The trustee insisted that sanctions were justified because the company had sent out at least 15 other statements that included post-petition fees without filing a single Rule 3002.1 notice, had been chastised by another bankruptcy court for similar violations, and had been sanctioned previously for issuing dozens of erroneous statements to the debtors for over two years.   The court did impose monetary sanctions, but based on the following salient factors:  1) that the mortgage company had notice of the need to comply with the applicable Rule, 2) that this was neither a "one-time error" nor a first offense in the district, and 3) that the company was given an opportunity to correct the underlying processes which caused the Rule 3002 violations and failed to do so.   In addition, the sanctions were imposed, in large part, for the mortgage company's violation of court orders, particularly because this was not the first time the company failed to comply with an order, and the previous sanction was not enough to deter the improper conduct.   Also significant is the court's observation that the mortgage company's "mistakes" were not innocent:

> PHH had knowledge of the Debtors Current Order, violated it in at least the two instant cases by including postpetition fees that should never have appeared in the first place, only corrected the statements after the Trustee filed a motion for sanctions, and then asserted it did not violate a court order at all.   Taken together, particularly in the context of prior court warnings, these actions raise serious concerns about whether PHH is making a good faith effort to comply with Rule 3002.1 and heed the directives of court orders declaring debtors current.

41

*Id.* at n.10.    While this Court acknowledges that monetary sanctions were imposed, it is evident that the facts justifying those sanctions are not present here.    Again, the UST has not alleged that Resurgent has acted in bad faith, nor has he alleged that Resurgent violated a court order in connection with this conduct.    The Court does not find *Gravel* compelling, nor does it find that sanctions are warranted under the facts in this case.

### E.  Permitting an Independent Cause of Action is Beyond the Scope of Rule 3001

Resurgent also takes the position that an independent cause of action is not permitted under Rule 3001, citing *In re Critten*, 528 B.R. 835 (Bankr. M.D. Ala. 2015).  The *Critten* court relied on the statutory language to reach its conclusion:

> While [Rule 3001(c)(2)(D)(ii)] specifically mentions an award of expenses and attorney's fees, there is nothing in the language which indicates that Congress intended to create an independent action for the violation of Rule 3001.  It appears clear enough from this language that this is a remedy which may be awarded in connection with a proceeding involving the validity of a claim and it does not create a stand-alone cause of action.  Examination of the cases interpreting this language supports this reading.

*Id.* at 840.  The UST cites several reasons that *Critten* is distinguishable from the instant case, but as Resurgent points out, none of them is persuasive.   For example, the UST points out that he is alleging numerous violations of Rule 3001 that are an integral part of Resurgent's claims filing practice.  That distinction is immaterial.  The UST offers no explanation as to why the widespread occurrence of the violation would change *Critten's* underlying rationale, specifically that nothing in the statutory language indicates a legislative intent to permit an independent cause of action when the remedies afforded in Rule 3001 are specific.  Accordingly, this Court will not allow the UST to pursue a stand-alone cause of action.

42

While the Court is not suggesting that Resurgent's practice of not providing the information in its proofs of claim as required by Rule 3001 is appropriate, or even excusable, Count III is dismissed, because granting the relief requested would be inconsistent with the Bankruptcy Code and Rules.

### V.      Plaintiff has Stated Valid Objections to the Proof of Claim

#### A.   Bases for Objections

In the *Clay* bankruptcy, the UST objected to specific claims 4-1, 5-1, 6-1 in Count IV and seeks disallowance because each of these three claims was not executed and filed in accordance with Rule 3001(b).  He also seeks disallowance because the original writing was not provided as required by Rule 3001(c)(1) so the claims lack prima facie validity.  He argues that because debtor's Schedules indicate the value of these claims is $0, it is impossible to determine the claim amounts without the original writings.  The UST claims Resurgent failed to produce sufficient documentation in response to his requests and has failed to establish it has a valid, allowable and enforceable obligation and therefore, these claims should be disallowed.

Also in Count IV, the UST argues claim 9-1 in the *Davis* bankruptcy should be disallowed under § 502(b)(1) because the statute of limitations on enforcing the claim had long expired before Debtor commenced the bankruptcy.  The UST also asserts that *Davis* claim 9-1 lacks prima facie validity because Resurgent failed to provide all applicable information required under Rule 3001(c)(3), the claim does not match any information set forth on debtor's Schedules and Resurgent failed to produce the original writing on which the purported claim is based.

In Count V, the UST objected to *Clay* claims 10-1 and 11-1 as lacking prima facie validity because the original writing required under Rule 3001(c)(1), or the information required

43

by Rule 3001(c)(3) was not filed nor produced when requested, and the claims do not match any information on debtor's Schedules.  Additionally, the UST alleges that claims 10-1 and 11-1 should be disallowed under § 502(b)(1) because the statute of limitations had expired before debtor commenced the bankruptcy case.

In the *Davis* bankruptcy, the UST seeks disallowance of claim 8-1 because it was not executed and filed in accordance with Rule 3001(b) and because debtor's Schedule F contradicts information in claim 8-1. Defendants specifically assert the UST is not entitled to relief on the seven proofs of claim at issue.

### B.   Timeliness/Statute of Limitations Objections

Defendants first argue that the UST is not entitled to disallowance of claims 9-1, 10-1 and 11-1 on statute of limitations grounds because the UST's objections are untimely under Local Rule 3085-1 which provides claims will be allowed as listed in the notice unless debtor or a creditor files and serves an objection on the trustee, debtor's attorney and other appropriate parties within 30 days.  This Court's Local Rules provide a claims procedure in Chapter 13 cases wherein a deadline is set for claims to be filed.  After the claims deadline, the Chapter 13 trustee files a notice to allow or disallow claims and such claims are allowed if the debtor or a creditor does not object within 30 days.  The Chapter 13 trustee then pays allowed claims according to the notice.  *See* Local Rules 3084-1 and 3085-1.  In the *Clay* bankruptcy the notice was filed on December 19, 2014, and in the *Davis* bankruptcy it was filed on October 27, 2014.

The UST asserts that the provisions of Local Rule 3085-1 do not apply to the UST and that the rule merely applies to objections to the Chapter 13 trustee's notice, and is not a bar date for substantive claims objections.  Additionally, the UST notes that the text of L.R. 3085-1

44

specifically states that the 30-day deadline applies only to debtors and creditors who receive

notice and that the UST was not such a debtor or creditor and was not served with notice.  Thus,

he argues that because a party is entitled to notice before a binding order has preclusive effect on

it, the Rule doesn't apply to the UST's claims objections at issue.

The Court declines to rule on whether Local Rule 3085-1 sets a specific bar date to object

to filed claims because the UST did not receive notice of the deadline to respond under L.R.

3085-1.  Regardless of the implications of Local Rule 3085-1, no debtor or creditor, including

the UST, can be bound by such Rule without receiving proper notice.  *Baldwin v. Credit Based

Asset Servicing and Securitization*, 516 F.3d 734, 737 (8th Cir. 2008).  Defendants did not

respond to the substantive statute of limitations objections, and the expiration of the statute of

limitations is a valid objection.  Thus, these claims objections will not be dismissed on this

ground.

### C.  Violation of Rule 3001(a), (b) and (c)

The UST alleges that Resurgent knowingly and intentionally filed proofs of claim with

Ms. Gaines's signature that she did not personally review and it therefore violated Rules 3001(a)

and (b).  Resurgent asserts that *Clay* claims 4-1, 5-1, 6-1 and *Davis* claims 8-1 and 9-1 did

comply with Rule 3001(a) and (b).  The UST also alleges that *Clay* claims 4-1, 5-1 and 6-1

violated Rule 3001(c) because they did not have the writings upon which they were based

attached, and that claim 10-1 and *Davis* claim 9-1 did not contain information required under

Rule 3001(c).  He further alleges that the original writings were not provided when requested by

the UST in violation of Rule 3001(c)(3)(B).  The UST also alleges that *Clay* claim 11-1 and

*Davis* claim 8-1 should be disallowed because Resurgent also failed to provide such original

45

writings when requested.  All of the Rule 3001 allegations are discussed extensively above and while such violations deprive the claims of prima facie validity, they are not ultimately a basis for disallowance of claims in and of themselves.

Defendants claim that the UST's objections to the proofs of claims were untimely; that the appropriate remedy for non-compliance is denial of prima facie validity for the claims; and that even if disallowance were permitted that Defendants have the right to amend the claims under Local Rule 3007-1(D).  The UST responds that even if non-compliance with Rule 3001 does not support disallowance, his Complaint goes beyond that and states a basis under § 502(b) for disallowance.  At a minimum the UST argues, Resurgent's non-compliance with Rule 3001 creates an evidentiary dispute concerning the claims' validity, thus overcoming the motion to dismiss.  Similarly, the UST asserts that even if Defendants do have a right to amend their claims under Local Rule 3007-1, such right does not render the UST's substantive objections non-justiciable, noting that no such amendments have been filed.  Further, the UST notes that Resurgent concedes that its non-compliance with Rule 3001 may impair the claims' prima facie validity, and thus creates a justiciable evidentiary dispute concerning the claims' validity and extent.

The Court agrees with the UST.  Section 502 provides that a claim is deemed allowed unless a party in interest objects for one or more of the reasons listed in subparagraphs (1)-(9).  A claimant's failure to comply with Rule 3001 is not by itself a reason to disallow a claim.  Section 502(b) lists the grounds for disallowance of a claim and non-compliance with Rule 3001 is not one of them.  *See Sears*, 863 F.3d at 979.  A proof of claim is prima facie evidence of the claim or interest; however, if a proof of claim does not comply with the Bankruptcy Rules then the

46

claim loses its prima facie validity.  Rule 3001(f); *In re Gilbreath*, 395 B.R. 356 (Bankr. S.D. Tex. 2008).  Creditors have the initial burden of coming forward with documentation to support their claims under Rule 3001(a) and (c).  *Id.*  The failure to attach or provide the required documentation under Rule 3001 will result in the loss of the proof of claim's prima facie validity.  *See In re Armstrong*, 320 B.R. 97 (Bankr. N.D. Tex. 2005).  However, just because a proof of claim is deemed not prima facie valid because of failure to comply with Rule 3001, it is not automatically disallowed but the objection is sufficient to shift the burden back to the claimant to prove the validity of its claim.  *Cluff*, 313 B.R. at 331.

Resurgent's contention that the UST's objections to the claims must be dismissed because claimants have a right to amend or support such claims is incorrect.  The mere opportunity to amend a claim does not change the fact that a claim and objection remain pending for adjudication.  And, as the UST points out, the claims have not been amended.

The contention that the objections should be dismissed because they do not assert objections authorized by §502 is also incorrect.  The Court finds that the UST's objections do in fact go beyond merely asserting a failure to provide documentation under Rule 3001.  As mentioned, the UST also asserts that debtors' Schedules show the debt owed as $0 or do not include the debt.  The Court will construe such objections to fall within the ambit of §502(b)(1), which provides that a claim must be disallowed if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." It can be reasoned that the UST is objecting to the relevant proofs of claim on the basis that debtors do not have any liability to certain

47

Defendants.  In addition, such Defendants' failure to supply the documents as requested is an indication that there may be no basis for the claims.

Thus, Counts IV and V survive the Rule 12(b)(6) challenge because accepting all the pleaded facts as true, the UST does indeed state a claim upon which relief may be granted.  Thus, the UST has adequately plead his objection to Defendants' proofs of claim, so the motion to dismiss is denied as to Counts IV and V.

## VI.    Miscellaneous Procedural and Remedial Issues

In their motion to dismiss, Resurgent and the other Defendants raise several other objections to the nature and scope of the relief sought by the UST in various counts of the Complaint.  Specifically, Resurgent contends the UST lacks standing to request and the Court lacks the power to grant relief of a nationwide scope as the UST appears to request.  Second, Resurgent points out that he requests monetary relief in some counts of the Complaint and further requests that the Defendants be held jointly and severally liable for any such award. Defendants contend that is inappropriate for numerous substantive and practical reasons. Finally, Resurgent contends that one of the specific remedies requested, the appointment of a monitor, is unavailable because the Court lacks the power to do so, the rules preclude it and the prerequisites for such an appointment have not been established.

The Court is granting the motion to dismiss with respect to the substantive claims for relief other than the objections to the proofs of claim filed in the two underlying bankruptcy cases.  As to the claims for violation of Rule 3001(c), Resurgent does not contest that it has filed numerous claims which do not comply with the requirements of that rule.  The Court, however, has concluded that there is no independent cause of action for that failure and that certain of the

remedies sought by the UST, not specified in Rule 3001(c), are unavailable.  To the extent that remedial questions remain with respect to Resurgent's violation of Rule 3001(c), some of these secondary issues may remain relevant.  To some extent, these issues are themselves interdependent.  For example, because the Court concludes that it lacks the power to grant relief of the scope the UST is apparently requesting, there will be no need for a monitor, as described below.

### A.  Relief Applicable to Claims Filed or Conduct Occurring in Cases Other Than the Ones Before This Court

It is clear that the UST is asking for relief that goes well beyond the events that have transpired in the two underlying bankruptcy cases before this Court.  Although he was somewhat coy in oral argument about the precise nature and scope of the relief requested, and suggested that such questions are premature, certain things make clear that he is requesting relief of an exceptionally broad scope and that it is appropriate for the Court to express its views on the question at this stage of the litigation.

A review of the allegations of the Complaint makes clear that the UST is not focused solely or even primarily on the claims asserted by Defendants and filed by Resurgent in the two bankruptcy cases before this Court.  The Complaint is replete with allegations of deficiencies in Resurgent's process with regard to the thousands of proofs of claims that it has filed in jurisdictions all over the country.  This is true with respect to all three of the principal substantive violations urged by the UST including improper attestations, the filing of claims barred by the statute of limitations and the filing of claims lacking the information or documentation required by Rule 3001(c).  In addition, the UST's purported justification for the appointment of a monitor

49

is that the volume of claims and complexity of the relief requested necessitate the appointment of an individual who can administer those remedies.

Resurgent argues that the UST lacks standing to request relief of a nationwide character suggesting that although he has been widely characterized as the "watchdog" of the bankruptcy system, he lacks any statutory authorization to make requests of the breadth that he apparently seeks in this case.  Resurgent notes that in several places the Bankruptcy Code specifically authorizes the UST to request relief of that nature, primarily with respect to bankruptcy petition preparers and debt relief agencies.  Because the Court believes it lacks the power to grant relief of the kind requested, it puts aside for another day the question of whether the UST has standing to make such requests.

The Court concludes it has no power to grant relief which would purport to be binding as to claims filed and conduct occurring in cases other than the ones before this Court.  But if this Court had the power to do so, the Court would decline to exercise it and to purport to announce rules that would have effect beyond the matters pending before it. There are numerous legal and practical reasons supporting this view.

Title 28 gives this Court jurisdiction over cases and proceedings pending before it, not over cases and proceedings pending in another district before another bankruptcy judge.  This Court agrees with the holding in *In re Stewart*, 647 F.3d 553 (5th Cir. 2011), in which the Fifth Circuit reversed a broad injunction issued by the bankruptcy court, observing "misdeeds in other cases can be addressed by the judges in those cases.  If the case-by-case process, with the discipline of developed jurisprudence is thought to be inadequate, there remains the rulemaking authority. " *Stewart,* 647 F.3d at 557.  At least one other court has expressed similar reservations

50

about the court's power in a virtually identical context.  Transcript of Oral Argument at 52, *Resurgent Capital Services, LP v. Neary*, No. 16-3101 (Bankr. N.D. Tex. December 5, 2016) (Houser, BJ).  *See also In re Jemsek Clinic, P.A.*, 2015 WL 534659 at *6 (Bankr. W.D.N.C. Feb. 6, 2015)(concluding that the bankruptcy court's power to address any wrong allegedly committed by the parties in another district was "questionable at best",  and declining to entertain the argument); *Woodard v. STP Corp.*, 170 F.3d 1043, 1045 (11th Cir. 1999)("sanctions are properly applied only to cases before the court, not to cases in other courts"); *Trulis v. Barton*, 107 F.3d 685, 694 (9th Cir. 1995) ("the district court did not have power to sanction conduct that occurred in a different court in a different case").

The UST's attempts to distinguish *Stewart* are unpersuasive.   Contrary to his allegations, the court is not commenting merely on the debtor's standing to obtain the relief requested but the United States Trustee's as well, holding that the court's power to protect from abuse of process did not support the issuance of the injunction.  *Stewart,* 647 F.3d at 557.  The case of *In re John Richards Homes Building Company, LLC*, 404 B.R. 220, 228 (E.D. Mich. 2009), does not support the UST's position that one court may award sanctions for conduct that occurred in another jurisdiction.   In that instance, the conduct that resulted in the issuance of a sanctions award was conduct in a second court that arguably violated sanctions previously awarded in the first court.

There are practical reasons why this must be the case.  First, as the Court noted above with respect to the filing of claims barred by the applicable statute of limitations, courts have taken different positions on the question.   Resolution of the issue depends in part on the underlying state law which varies somewhat from jurisdiction to jurisdiction.  No one size fits all

51

national rule would be appropriate.  What this Court thinks is permissible may be prohibited by another and vice versa.  Moreover, as Resurgent notes, this approach would permit the UST to do an end run around the limitations of Rule 9011 which requires that the potential target be warned and given the opportunity to withdraw the offending pleading before the court may award sanctions.  Finally, both the propriety and nature of sanctions should be determined based on the circumstances prevailing in the particular matter.  *In re Raymond Professional Group, Inc.*, 420 B.R. 448, 462 (Bankr. N.D. Ill. 2009)(before imposing sanctions under Rule 9011, a court must look to "objectively ascertainable circumstances"); *In re Collins*, 250 B.R. 645, 662 (Bankr. N.D. Ill. 2000)(whether actions under Rule 9011 are sanctionable requires a fact-specific inquiry)(citation omitted).  This obviously requires a case-by-case consideration of the nature and effect of the behavior under all the circumstances.  Just to illustrate, using one of the claims the UST asserts in this case (violations of Rule 3001(c)) the rule itself provides that a court may decline to issue an evidentiary bar order if the failure to provide the information was substantially justified or harmless.  Quite obviously this would require a consideration in each instance of the reason for the failure to provide the required information and its effect on the debtor and other parties in interest.  No uniform rule could take into account the considerations the rule itself suggests need to be made.

### B.  Liability of Defendants Other Than Resurgent

Plaintiff asks this Court to apply the principle of joint and several liability with regard to sanctions against Defendants other than Resurgent.  Defendants point out that joint and several liability means that each defendant would be responsible for the conduct of and damages assessed against each other defendant.

Defendants argue that the literal application of that concept would make little sense in this case.  This Court agrees.  For example, it makes no sense to hold one defendant liable for the conduct of Resurgent in the process of filing a proof of claim for another defendant.  While the UST appears to concede this and claims he does not intend that result, he clearly does intend a literal application of the doctrine of respondeat superior in assessing sanctions against entities for whom Resurgent acted.  Even that much, the Court thinks inappropriate.

An award of sanctions is based upon the culpability of the party being sanctioned and depends on an assessment of the particular circumstances.  *In re Kilgore*, 253 B.R. 179, 187 (Bankr. D.S.C. 2000); *In the Matter of Pasko*, 97 B.R. 913, 918 (Bankr. N.D. Ill.1988).  For that reason, a blanket application of the doctrine of respondeat superior, which would result in applying the same remedies to each defendant regardless of its knowledge and level of participation in the alleged violation is not appropriate.  It is obvious, as the UST observes that Defendants must remain as defendants on those counts in which Plaintiff seeks disallowance of the claims filed on their behalf since they are the holders of the claims.  Beyond that, the UST's attempt to apply joint and several liability or the doctrine of respondeat superior in a manner which does not involve assessing the culpability of the individual defendant to be sanctioned is inappropriate.  Accordingly, to the extent that such issues remain with regard to the claim objection counts, the Court will not consider sanctioning a defendant other than Resurgent without assessing the allegations and evidence related to its particular culpability in the matter.

### C.  Appointment of a Monitor

The Court has dismissed the substantive claims, ruled that some of the requested remedies are not available and expressed its view that it may not grant relief that purports to bind

53

other courts in cases filed in other jurisdictions or remedy behavior by Resurgent or the other

Defendants in those jurisdictions.  The remaining counts deal solely with proofs of claim filed by

Resurgent on behalf of the various Defendants in the two bankruptcy cases pending before this

Court.  Under these circumstances, there is little support for the appointment of a monitor to

assist with the implementation of any remedy the Court may order.

Resurgent argues as a threshold matter, that there is no authority to appoint a monitor in a

bankruptcy case or proceeding.  First, it argues that the Court lacks the power to do so.  Second,

he argues that the appointment of a monitor is tantamount to the appointment of a master, which

is governed by Fed. R. Civ. P. 53 which is expressly made not applicable to bankruptcy

proceedings by Fed. R. Bankr. P. 9031.  Because the Court concludes that a monitor is not

necessary given the potential scope of the relief that might be granted on the remaining counts, it

need not and will not decide either of these issues.  It does observe, however, that there is no

Bankruptcy Code provision or rule which authorizes the appointment of a monitor and the UST

can cite no case in which this has been done over the objection of a party.

The test customarily applied for determining whether to appoint a monitor requires the

court to make three findings, one of which is that the remedy is complex. *Cobell v. Norton*, 392

F.3d 461, 477 (D.C. Cir. 2004). The UST does not appear to contest this legal principle, although

he disagrees with Resurgent's view as to how it applies to these facts.  Considering the Court's

rulings on the principal substantive questions and that the only counts remaining relate to the

UST's objections to the proofs of claim filed in these two bankruptcy cases, administering any

remedy the Court might apply for Defendants' violations of applicable Code provisions or rules

would hardly be complex.  Accordingly, one of the prerequisites for the appointment of a monitor cannot be established.  The Court, therefore, considers it unnecessary to do so.

### VII.    Summary of Rulings and Conclusion

For the sake of clarity and given the number and complexity of the issues raised by the Complaint and the motion to dismiss and the length of the opinion, the Court here summarizes its principal rulings.

As to the UST's complaints of improper signature and attestation of proof of claim forms, the Court disagrees in part and agrees in part.  It finds that Resurgent has not violated any signature requirement and that an appropriate electronic signature has been affixed to the proofs of claim.  According to this Court's local rules, that person is fully responsible for the filing. There is no allegation that Resurgent was not authorized to file the claims for the Defendants, that Ms. Gaines was not authorized to execute the claims on behalf of Resurgent or that the individual who affixed her signature was not authorized by her to do so.  The Court does agree with the UST's contention that Resurgent's practice of affixing to a proof of claim a signature of an individual who had no role in the preparation of the proof of claim, has no knowledge of the facts contained therein and who has made no attempt to verify them is inconsistent with the bankruptcy rules and the instructions on the proof of claim.  Those instructions say, and have for some time, that the person who prepares the proof of claim must sign it.  Rule 9011 of the Federal Rules of Bankruptcy Procedure is applicable to the execution of a proof of claim form. An individual with no personal involvement in the preparation of the claim cannot make the attestation required by that rule and by the language of the form itself.  The Court will not draw the inference Resurgent requests with respect to the change in the language of the official form.

55

As noted, the language may have been changed to clarify an ambiguity, rather than to change the appropriate standard.  Resurgent's allegations with regards to its procedures are not relevant as it is improper for the Court to consider them on a motion to dismiss and because, even if true, they would not comply with the requirements.   Nonetheless, this Court has determined that no sanction or remedy will be applied under the circumstances.  Whether the Court is applying § 105 or its inherent power to sanction, it must make a specific finding of bad faith, which is not appropriately alleged in the Complaint.  In addition, sanctions require a particular level of culpability on the part of the filer, which is not indicated here based on the allegations and arguments.  Resurgent's position, although incorrect, is not entirely without basis.  No injunctive or other prospective relief is appropriate because the UST fails to allege that Resurgent is engaged in a continuous course of conduct with respect to its proof of claim filing procedures.  In fact, there are indications in the record to the contrary.  Finally, no such award is appropriate because no damage is alleged to debtors or any other parties in interest in bankruptcy cases as a result of Resurgent's claim filing practices.

Claims barred by the applicable statute of limitations are nonetheless claims within the meaning of the Code's definitions.  In jurisdictions like Missouri, in which a claim is not extinguished by the expiration of the statute, creditors are entitled to file such claims and doing so does not subject them to sanctions.  The statute of limitations is an affirmative defense which is waived if not asserted and which the rules do not require the claimant to anticipate.  Most all the courts that have considered this specific question have so held.  No provision of the Bankruptcy Code or Bankruptcy Rules bars the filing of such claims.  On the contrary, the Rules Committee has taken a considered approach to such claims and determined that claimants need

56

only supply the additional information specified by Rule 3001(c).  The rule makers specifically considered and rejected one of the remedies the UST has asked the Court to impose on Resurgent and the Defendants.  Rule 9011 does not bar the mere filing of such claims but applies only if the claimant continues to assert the claim after the defense has been raised.  The UST cannot use Rule 9011 as an analogy for the imposition of sanctions while refusing to abide by its procedural limitations, including the safe harbor.  His attempt to use § 105 or this Court's inherent powers to do so is impermissible.  At any rate, neither § 105 nor this Court's inherent power is applicable unless bad faith is proven and alleged which is not the case here.

There appears to be no dispute by Resurgent that it has filed numerous claims which fail to comply with the requirements of Rule 3001, either with regard to the attachment of a writing or the provision of the additional information requested by subdivision (c)(3) of the Rule.   The appropriate remedy generally for the failure of a claim to comply with the procedural requirements of Rule 3001 is loss of the presumption of prima facie validity as to liability and amount.  As to open-end credit agreements, the remedy is specified in the Rule.  While the Rule authorizes the Court to grant certain "other appropriate relief" those remedies must be akin to the one specified, an award of attorneys' fees.  Courts have rejected attempts to use the Rule to impose miscellaneous creative remedies such as some of those urged by the UST.  Fees are only recoverable for efforts required as a result of the claimant's failure to supply the necessary documents or information, but not with regard to general investigation of the claimant's claim filing practices.  No independent cause of action was intended in the adoption of Rule 3001(c).  The Court may not disallow a claim for mere failure to comply with its requirements.  Claims may be disallowed only for the reasons cited in § 502(b) of the Bankruptcy Code.  For the same

57

reason, the Court cannot decree a remedy that would be tantamount to claim disallowance, such as disgorgement of amounts received on filed claims.

The Court rejects Resurgent's attempts to defend against the objections to the individual proofs of claim filed in two underlying bankruptcy cases on the ground that they are untimely under Local Rule 3085-1 because filed more than 30 days after the issuance of the Chapter 13 Trustee's notice to allow claims.   The UST did not receive notice of that pleading and therefore is not bound by the deadline imposed in it.   The statute of limitations is a valid defense to a proof of claim and grounds for an objection to its allowance.   To the extent the objections assert that the claims are so barred, they are valid objections and are not subject to dismissal.   Failure to comply with the various requirements of Rule 3001, either with regard to signature or with respect to provision of necessary documents and information, is not grounds for disallowance of the claims.   However, after considering the allegations of the Complaint, the Court concludes that the objections go beyond a mere request for disallowance based on failure to supply documents, particularly as to claims, like these, that lack the benefit of the presumption.   The objections assert that the record includes other indicia, including manner in which they are scheduled that the debtors are not liable on the claims or that they are filed in incorrect amounts. In addition, the UST alleges that he made specific requests to Resurgent to supply documentation and other evidence establishing liability and correctness of the claim amounts and received no response, indicating that the claimants have no support for the claims.

The UST appears to request relief that would purport to bind other courts in cases other than the ones pending before this Court.   This Court concludes that it lacks the power to award such relief and would not do so even if it had jurisdiction for numerous legal and practical

58

reasons.  Chief among them are that differing views exist among courts as to the propriety of the conduct which is the subject of the allegations in the Complaint and that awards of sanctions should be based upon consideration of the circumstances of the particular case.

The Court rejects the UST's suggestion that the doctrine of respondeat superior makes each defendant liable for the full extent of liability of Resurgent for actions taken on its behalf for the reason that the imposition of sanctions should be based upon an assessment of the culpability of the individual party based on the circumstances of the case.

Finally, the Court will not decide whether it is authorized by the Bankruptcy Code or rules to appoint a monitor or whether such an appointment is tantamount to the appointment of a master, a remedy unavailable in bankruptcy cases pursuant to Rule 9031.  It does find, however, that given its rulings on the primary substantive and procedural questions and that the motion to dismiss has been denied only with respect to the few proofs of claim filed in the underlying bankruptcy cases, administration of whatever remedy the Court might order, if it were something beyond disallowance of the claim, is insufficiently complex to warrant the appointment of a monitor.

For all these reasons, the Court grants the motion to dismiss insofar as it relates to Counts I, II, III and VI and denies the motion to dismiss as to Counts IV and V.

Dated:___September 1, 2017_____          ___/s Dennis R. Dow_____
                                               Honorable Dennis R. Dow
                                               United States Bankruptcy Court